[Cite as *State v. Harris*, 2010-Ohio-3165.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO/CITY OF YOUNGSTOWN, | ) ) ) | |
| PLAINTIFF-APPELLEE, | ) ) | |
| VS. | ) ) | CASE NO. 09-MA-125 |
| RONISHA HARRIS, | ) ) ) | OPINION |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Youngstown Municipal Court of Mahoning County, Ohio
Case No. 09CRB481

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellee

Attorney Joseph R. Macejko
Youngstown City Prosecutor
Attorney Bret R. Hartup
Senior Assistant Law Director
City of Youngstown
26 S. Phelps Street
Youngstown, Ohio 44503

For Defendant-Appellant

Attorney Richard J. Hura
WPA Memorial Building
132 S. Broad St., Suite 204B
Canfield, Ohio 44406

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 25, 2010

DONOFRIO, J.

{¶1} Defendant-appellant, Ronisha Harris, appeals from two Youngstown Municipal Court judgments each convicting her of menacing following a single bench trial.

{¶2} This case involves two separate encounters between appellant and Laresa Tolbert.

{¶3} According to Tolbert, on March 5, 2009, appellant was with two other women in the parking lot of the Family Dollar Store in Youngstown when they approached her while she was seated in the driver's seat of her aunt's car. Tolbert testified that appellant displayed vulgar body language toward her and called her a "bitch." She maintained that appellant, in a car driven by Loren Whatley, then followed her to her home, all the while screaming and yelling at her. She stated that at her house, appellant's sister, Danita Harris, exited the vehicle and threw a rock at the car she was driving, resulting in damage to the car.

{¶4} Also according to Tolbert, on March 7, 2009, she was driving when she noticed appellant riding in the same vehicle as the previous day, again driven by Whatley and accompanied by Danita. She stated that the vehicle followed her home again. This time she stated that Danita exited the vehicle and threw a bottle at her car. Tolbert stated that the car appellant was riding in drove away from her house but soon returned with a masked man waving a gun out of the car window at her. During the entire incident appellant was acting "angrily" with "head, neck rolling, finger pointing, hyper, bouncing up and down."

{¶5} Appellant filed police reports on both occasions. As a result two separate complaints were filed against appellant, each charging her with one count of menacing, fourth-degree misdemeanors in violation of R.C. 2903.22(A).

{¶6} The charges were tried together at a bench trial on June 22, 2009. The trial court found appellant guilty of both charges.

{¶7} The trial court subsequently sentenced appellant to 15 days

incarceration on each count to be served consecutively; fined her $150 on each count, plus costs; and placed her on probation for one year.

{¶8} Appellant filed timely notices of appeal on July 24, 2009.

{¶9} The trial court stayed the execution of appellant's sentences pending this appeal.

{¶10} Appellant raises a single assignment of error, which states:

{¶11} "THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH BEYOND A REASONABLE DOUBT THAT THE APPELLANT WAS GUILTY OF MENACING."

{¶12} Appellant argues that plaintiff-appellee, the State of Ohio, did not offer sufficient evidence on which to convict her.

{¶13} First, appellant argues that Tolbert's testimony regarding the March 5 incident was unreliable because it changed several times. She further asserts that Clark's testimony, which could have corroborated Tolbert's testimony, was not consistent with Tolbert's testimony because Clark testified that the incident occurred at a different time of the day and because she stated that appellant was outside the car while Tolbert stated that appellant was inside the car. Additionally, appellant points to her own testimony where she denied Tolbert's accusations.

{¶14} Second, appellant argues that regarding the March 7 incident, Tolbert's testimony is highly suspicious. Appellant asserts that Tolbert failed to mention any details in her police report, which she contends makes her story in court unbelievable. And she argues that the state's other witnesses did not corroborate Tolbert's testimony. Appellant argues that her testimony, on the other hand, was unchanging and supported by her other witnesses.

{¶15} Although couched in terms of sufficiency of the evidence, appellant actually makes a manifest weight of the evidence challenge to her convictions. Her argument boils down to alleging that the state's witnesses were not credible while her witnesses were credible. Consequently, we will review both whether appellant's convictions are supported by sufficient evidence and whether they are supported by the manifest weight of the evidence.

{¶16} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith,* 80 Ohio St.3d at 113.

{¶17} Alternatively, in determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id., 78 Ohio St.3d at 390 (Cook, J., concurring). "A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict." (Emphasis sic.) Id.*,* 78 Ohio St.3d at 388.

{¶18} Appellant was convicted on two complaints of menacing in violation of R.C. 2903.22(A), which provides: "No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."

{¶19} We will examine the evidence as to each instance of menacing

separately.

March 5, 2009

{¶20} Tolbert was the prosecution's main witness. She testified that on March 5, 2009, she was in the Family Dollar Store parking lot. (Tr. 7). Tolbert was driving her aunt's car. (Tr. 8). She stated that appellant came up to the window of the driver's side door of the car she was driving. (Tr. 9). Tolbert stated that appellant had "hostile body language, vulgar words," which were directed at her. (Tr. 8-9). Tolbert stated that appellant called her a "bitch." (Tr. 9). She further testified that appellant was accompanied by her sister Danita. (Tr. 9).

{¶21} Tolbert stated that appellant and Danita followed her to her house in a car driven by Loren Whatley. (Tr. 10). She indicated the drive was "bumper to bumper" the whole way and the entire time the three women displayed "[a]ngry behavior, bouncing up and down, arms going" and "screaming and yelling." (Tr. 10-12). Tolbert stated that she parked the car she was driving in front of her house and Whatley's car stopped behind it. (Tr. 12). Tolbert stated that Danita exited Whatley's car and threw a rock at the car she was driving. (Tr. 12). She testified that it caused some damage to the car. (Tr. 14). Tolbert testified that the women then drove off. (Tr. 13).

{¶22} Tolbert testified that during the incident, she was afraid that appellant and the other women were going to jump out and physically attack her. (Tr. 15). She also testified that she contacted police regarding the incident. (Tr. 13).

{¶23} When asked about her relationship with appellant and the other women, Tolbert testified that there had been an incident on December 1, where she was accused of trying to run over appellant, Danita, and another woman with her car. (Tr. 9, 25).

{¶24} On cross examination, Tolbert stated that while in the Family Dollar Store parking lot, Danita attempted to pull open her car door while appellant stood by Danita's side. (Tr. 22-23). She admitted that she did not mention this in her direct testimony. (Tr. 23). She also testified that she filed for a civil protection order against

appellant on March 10. (Tr. 29).

**{¶25}** Darilyn Clark is Tolbert's aunt. Clark testified that she loaned Tolbert her car on March 5. (Tr. 38). She stated that when she loaned the car to Tolbert, the car had no damage to it. (Tr. 39). However, when Tolbert returned it to her, her car had a cracked windshield and her bumper had been hit. (Tr. 40). Clark identified pictures of the damage to her car. (Exhibits A and B).

**{¶26}** Clark stated that the damage occurred between 11:00 a.m., when she lent the car to Tolbert, and 4:00 p.m., when she next saw her car. (Tr. 41). Clark testified that she was on her way to Tolbert's house when she saw three girls exit a vehicle. (Tr. 42). She stated that the biggest girl threw a rock at her car window. (Tr. 42). Clark stated that it was not appellant who threw the rock but that appellant was kicking her car. (Tr. 43). After Danita testified, Clark identified her as the woman who threw the rock at her car. (Tr. 102).

**{¶27}** In her defense, appellant called several witnesses.

**{¶28}** Whatley was the first to testify. She stated that on March 5, she was with appellant and Danita at the Family Dollar Store in her Chevy Blazer. (Tr. 58-59). Whatley stated Tolbert was pulling into the parking lot as she was pulling out. (Tr. 59). She testified that neither she, appellant, nor Danita spoke to Tolbert or had any sort of contact with Tolbert. (Tr. 59-61). She also denied following Tolbert to her house. (Tr. 60).

**{¶29}** Danita testified next. She stated that on the day in question she was with appellant and Whatley at the Family Dollar Store. (Tr. 72). Danita stated that Whatley was driving. (Tr. 72). She stated that she saw Tolbert there but denied that she or appellant spoke to Tolbert or had any interaction with her. (Tr. 74). She also denied following Tolbert to her house and throwing a rock at the car Tolbert was driving. (Tr. 74-75).

**{¶30}** Danita admitted on cross examination that she had a prior conviction for felony assault when she was a juvenile. (Tr. 82).

**{¶31}** Appellant was the last witness. She stated that Whatley drove her and

Danita to the Family Dollar Store on March 5. (Tr. 87). She stated that as they were leaving the parking lot, Tolbert was pulling in. (Tr. 88). Appellant testified that neither she nor Danita nor Whatley said anything to or made any gestures toward Tolbert. (Tr. 88). She further denied following Tolbert to her house and denied seeing Danita throw anything at Tolbert's car. (Tr. 88-89).

{¶32} On cross examination, appellant admitted to a prior felony conviction for mishandling a firearm. (Tr. 100).

{¶33} The evidence here is sufficient to sustain appellant's conviction for the March 5 menacing incident. Viewing the evidence in the light most favorable to the state, as we are required to do, reveals that appellant knowingly caused Tolbert to believe that appellant would cause harm to her or her property. We need look no further than Tolbert's testimony.

{¶34} Tolbert stated that appellant and Danita approached her in the Family Dollar Store parking lot. Appellant called her a bitch and exhibited hostile body language towards her. Danita, with appellant by her side, attempted to open Tolbert's car door. Appellant then rode in Whatley's car while it followed Tolbert home. During this bumper-to-bumper ride, appellant demonstrated angry behavior such as waving her arms around, bouncing up and down, screaming, and yelling at Tolbert. Tolbert testified that appellant's actions caused her to be afraid for her physical safety, that she called the police, and that she filed for a civil protection order against appellant. This evidence is sufficient to support each element of menacing and, likewise, appellant's conviction.

{¶35} Next, we must consider appellant's credibility arguments as they relate to the manifest weight of the evidence issue.

{¶36} Appellant contends that Tolbert's testimony changed. Appellant is correct in that Tolbert did not mention on direct examination that appellant and Danita tried to get her out of the car. Appellant also contends that Clark's testimony contradicted Tolbert's testimony. She is correct here too. Clark testified that the incident at Tolbert's house occurred at approximately 4:00 p.m., but Tolbert indicated

that it occurred between 12:00 and 2:00 p.m. (Tr. 8, 41). Additionally, Clark testified that appellant got out of Whatley's car at Tolbert's house while Tolbert testified that appellant stayed in the car. (Tr. 13, 42-43). Appellant also contends that her testimony contradicted Tolbert's testimony, thus making Tolbert's testimony less credible. Again, appellant is correct inasmuch as her testimony contradicted Tolbert's testimony.

{¶37} But even though appellant is correct as to what the witnesses testified to, these arguments do not support a reversal of her conviction based on the weight of the evidence. Each of the issues appellant brings up goes to credibility.

{¶38} Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give deference to the fact finder's determination of witnesses' credibility. *State v. Jackson,* 7th Dist. No. 09-JE-13, 2009-Ohio-6407, at ¶18. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80.

{¶39} Here the trial court was in the best position to judge Tolbert's and appellant's credibility, along with the other witnesses' credibility. There were two versions of what occurred on March 5, Tolbert's version and appellant's version. Tolbert offered Clark's testimony, which corroborated her testimony in part. Appellant offered Whatley's and Danita's testimonies, which corroborated appellant's testimony that nothing happened. The trial court simply made a determination that Tolbert and Clark were telling the truth while appellant, Whatley, and Danita were not. We will not second guess the trial court's credibility determination in this case.

{¶40} Accordingly, appellant's first menacing conviction is not against the manifest weight of the evidence.

March 7, 2009

{¶41} As to the second incident, Tolbert testified that she was driving on

Mathews Road with two other women and a baby in her car. (Tr. 16-17). She noticed Whatley's car again. (Tr. 17). Once again, Whatley was driving. (Tr. 17). Appellant was in the backseat and Danita was in the front passenger seat. (Tr. 17-18). Tolbert testified that Whatley followed her to her house again. (Tr. 18). While en route, Tolbert stated that Danita got out of Whatley's car and threw a bottle at her car. (Tr. 18). Tolbert stated that once she arrived home, she called the police as Whatley drove past. (Tr. 18-19). However, she stated the women returned in Whatley's car, this time with a man in the backseat. (Tr. 19). Tolbert testified the man was hanging out of the window holding a black gun. (Tr. 19). She stated appellant was in the backseat too. (Tr. 19).

{¶42} Tolbert described appellant's behavior as "angry." (Tr. 20). When asked what she meant, Tolbert stated, "[t]he head, neck rolling, finger pointing, hyper, bouncing up and down." (Tr. 20). Tolbert stated that appellant's behavior made her feel afraid that appellant and the other women were going to do harm to her and the other people at her house. (Tr. 20).

{¶43} Shauntae Lewis was one of Tolbert's passengers on March 7. Lewis stated that she was riding in Tolbert's car on the way back from Giant Eagle when she saw someone get out of another car and throw a bottle at Tolbert's car. (Tr. 46). Lewis testified that Tolbert drove to her house and the other car followed. (Tr. 46). She stated that the women in the other car were all angry. (Tr. 47). She stated that they were yelling and cussing. (Tr. 47). Lewis also testified that she saw a man with a ski mask holding a long, black gun in the car. (Tr. 48).

{¶44} On cross examination, Lewis stated that when she saw the man with the gun in the other car, Tolbert was still driving her car. (Tr. 51).

{¶45} Whatley testified in appellant's defense as to the second incident also. Whatley stated that she picked appellant and Danita up at their house on Mathews Road. (Tr. 63-64). She stated that she first noticed that Tolbert was driving behind her on Southern Boulevard. (Tr. 64-65). Whatley testified that Tolbert then swerved in front of her and cut her off. (Tr. 65). Whatley denied that she followed Tolbert or

that anyone in her vehicle said anything to Tolbert. (Tr. 65-66). She also denied having a man with a gun in her vehicle. (Tr. 65).

**{¶46}** Danita stated that after Whatley picked her and appellant up, she noticed that Tolbert was following them. (Tr. 75). She testified that Tolbert swerved to try to get in front of them. (Tr. 75-76). Danita denied that the three women followed Tolbert, yelled at her, or threw anything at her car. (Tr. 76). She also denied that a man with a gun was ever in the car with them. (Tr. 76-77).

**{¶47}** Appellant also testified that on March 7, Whatley picked up her and Danita at their house. (Tr. 91-92). She stated that she first saw Tolbert as they were pulling out of her driveway onto Mathews Road. (Tr. 92). Appellant stated that Tolbert was behind them, but that Tolbert eventually turned in front of them. (Tr. 93-94). She testified that neither she, nor anyone else, made angry comments to Tolbert or threw anything at Tolbert's car. (Tr. 94-95). Appellant further denied that a man with a gun was ever in the car with them that day. (Tr. 95).

**{¶48}** Viewing the evidence in the light most favorable to the state, appellant's second menacing conviction is supported by sufficient evidence. Tolbert testified that appellant rode in Whatley's car while Whatley followed her to her house. All the while appellant was engaged in angry behavior including head and neck rolling, finger pointing, acting hyper, and bouncing up and down. Additionally, all of the women were yelling and cussing. Appellant also accompanied the other occupants of the vehicle while they drove past Tolbert's house with a man waiving a gun out the window. Appellant's actions caused Tolbert to feel afraid that appellant and the other women were going to do harm to her and the other people at her house. Once again, Tolbert called the police. This evidence, if believed, is sufficient to prove that appellant knowingly caused Tolbert to believe appellant would cause physical harm to her.

**{¶49}** Furthermore, even if the evidence did not support appellant's conviction as a principal, it clearly supported a complicity to menacing conviction. A charge of complicity may be stated in terms of the complicity statute or in terms of the principal

offense. R.C. 2923.03(F). In order to support a conviction for complicity by aiding and abetting, the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advise, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson* (2001), 93 Ohio St.3d 240, 245. The defendant's intent may be inferred from the circumstances surrounding the crime. Id. The defendant's "'[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" Id., quoting *State v. Pruett* (1971), 28 Ohio App.2d 29.34.

{¶50} Because a charge of complicity can be stated in terms of the principal offense, a trial court in a bench trial may make a finding of guilty in terms of either the principal offense or complicity. *State v. Gorayeb*, 7th Dist. No. 09-BE-15, 2010-Ohio-2535.

{¶51} The evidence in this case clearly demonstrated that appellant encouraged and cooperated with Danita, who threw a bottle at Tolbert's car, and Whatley, who followed Tolbert in her car with an armed man in the backseat. Thus, the evidence supported a complicity conviction.

{¶52} Again, appellant's specific arguments attack Tolbert's credibility and assert that appellant's testimony was more believable. For the same reasons set out above, we will not second guess the trial court's credibility determinations.

{¶53} As to this second incident, Lewis corroborated Tolbert's testimony. Lewis was in Tolbert's car when the encounter with appellant and the other women occurred. She too testified that she saw someone throw a bottle at Tolbert's car, that appellant and company followed Tolbert home, that the women were all angry, and that there was a man holding a gun in the backseat of Whatley's car. On the other hand, Whatley and Danita corroborated appellant's testimony that the only event that occurred was that Tolbert swerved in front of Whatley when they saw each other.

{¶54} Given our deference to the trial court's credibility determinations, appellant's second menacing conviction is not against the manifest weight of the

evidence.

**{¶55}** Accordingly, appellant's sole assignment of error is without merit.

**{¶56}** For the reasons stated above, the trial court's judgments are affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.